IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DEBORAH H.,[1] | Case No. 6:17-cv-01673-SU |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, Social Security Administration, | |
| Defendant. | |

SULLIVAN, United States Magistrate Judge:

Plaintiff Deborah H. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

Page 1 – OPINION AND ORDER

XVI of the Social Security Act (the "Act"). (Docket No. 1). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (Docket No. 21). For the reasons that follow, the Commissioner's decisions is REVERSED and this case is REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on October 24, 2013, alleging a disability onset date as of March 1, 2013. Tr. 18, 172–79.[2] Her applications were denied initially and upon reconsideration. Tr. 65–66, 87–88. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on October 12, 2016. Tr. 40–64, 130–131. On November 30, 2016, an ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18–28. The Appeals Council denied plaintiff's request for review on August 17, 2017, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1966, plaintiff was 46 years old on her alleged onset date. Tr. 26, 67. She completed at least the twelfth grade and has past relevant work as a cosmetologist and horticultural nursery salesperson. Tr. 26, 44, 234. She alleged disability based on mental conditions that include bipolar I with severe mania and moderate psychosis; anxiety; depression; and posttraumatic stress disorder ("PTSD"). Tr. 233; *see also* Tr. 20. Plaintiff lives with her significant other, son, and two roommates. Tr. 43.

---

[2] "Tr." citations are to the Administrative Record. (Docket No. 13).

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At

step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At step two, the

ALJ found that plaintiff had had the following severe impairments: PTSD, bipolar I disorder, persistent depressive disorder, generalized anxiety disorder, and alcohol use disorder. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 21. The ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could understand, remember, and carry out simple, routine, and repetitive tasks; she could tolerate only occasional contact with the public and coworkers. Tr. 23. At step four, the ALJ found that plaintiff could not perform any past relevant work. Tr. 26. At step five, the ALJ found, based on the RFC and VE testimony, a significant number of jobs existed such that plaintiff could sustain employment despite her impairments. *Id.* Specifically, the ALJ found plaintiff could perform the jobs of industrial cleaner, lumber straightener, and hand packager. Tr. 27. The ALJ thus found plaintiff was not disabled within the meaning of the Act. *Id.* at 27–28.

## ANALYSIS

Plaintiff asserts the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting her subjective symptom testimony; (2) improperly rejecting third party witness statements; and (3) failing to account for limitations expressed by the examining doctor in her RFC. The Court addresses each argument in turn.

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that

the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p clarified that ALJs are not tasked with "examining an individual's character" or propensity for truthfulness, and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's subjective symptom analysis "is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

The ALJ found that, although plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." Tr. 23. Plaintiff argues that the ALJ's reasoning does not satisfy the clear-and-convincing standard and that the ALJ failed to specify which testimony she found not credible. Pl.'s Opening Br. 5–10 ("Pl.'s Br.") (Docket No. 20). The Commissioner contends the ALJ properly rejected plaintiff's testimony because (1) the medical evidence did not support plaintiff's allegations; (2) plaintiff improved with medication and was not always compliant with treatment recommendations; and (3) plaintiff's activities of daily living were inconsistent with her allegations. Def.'s Br. 4–7 (Docket No. 22).

### A. Medical Evidence

Inconsistency between a claimant's allegations and the medical evidence can support the rejection of a claimant's subjective symptom testimony. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (rejecting claimant's testimony in part because the "statements at her hearing [did] not comport with objective evidence in her medical record"). However, especially in the mental health context, an ALJ may not select isolated instances of favorable psychological symptoms when the record as a whole reflects psychological disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The ALJ listed plaintiff's various mental health diagnoses and symptoms, but concluded that in her "mental status examinations [she had] generally demonstrated alertness, orientation, appropriate appearance, depressed mood, congruent affect, normal speech, normal thought process and content, normal judgment/poor judgment, fair to good insight, above average intelligence, and no suicidal ideation." Tr. 24 (citing Tr. 309, 334–36, 361, 380–83, 386).[3] However, the Ninth Circuit has rejected similar "observations of cognitive functioning" because, as here, they "do not contradict [a claimant who reports] symptoms of depression and social anxiety." *Ghanim*, 763 F.3d at 1164. Therefore, plaintiff's mental status exams were not sufficiently contradictory to justify rejecting her subjective symptom testimony. *See id.* (rejecting an ALJ's reliance on the claimant's

---

[3] The Court notes that at least some of the ALJ's citations to the record are to duplications of the same medical record. *Compare* Tr. 309, *with* Tr. 361.

"good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety"). Indeed, an independent review by the Court of the exams the ALJ relied on, demonstrates the ALJ impermissibly selected isolated instances of improvement and ignored evidence supporting plaintiff's testimony. *See Garrison,* 759 F.3d at 1017 ("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment"). For example, in a November 2013 mental status exam, although plaintiff was oriented to time, place and person and had normal judgment, she also presented as anxious with an inappropriate mood and depressed affect, and had poor insight. Tr. 309; *see also* Tr. 334 (presenting as "somewhat depressed with tearfulness" and poor judgment); Tr. 335 (same); Tr. 380 (presenting with depressed mood and affect); Tr. 382 (same).

Finally, even assuming plaintiff's mental status exams did in fact contradict her testimony, the ALJ failed to articulate what specific testimony she found not credible based on the mental status exam findings. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citation omitted); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that an ALJ must "link" the testimony she finds not credible to "to the particular parts of the record supporting her non-credibility determination").[4]

---

[4] To the extent the ALJ relied on the consultative examination of William A. McConochie, Ph.D., to discount plaintiff's subjective symptom testimony, similar to the reasons stated above, the ALJ's reasoning was neither clear nor convincing. The ALJ summarized the doctor's examination, including the result of the mental status exam and mental health diagnoses. Tr. 24–25. However, the ALJ did not supply reasoning explaining how those findings undermine plaintiff's testimony. *See Ghanim*, 763 F.3d at 1164; *Smolen*, 80 F.3d at 1284; *Burrell*, 775 F.3d at 1138.

B.   **Medication**

An ALJ may discount testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); 20 C.F.R. §§ 1529(c), 416.929(c) (effective June 13, 2011 through March 26, 2017)[5] (explaining that the "effectiveness . . . of any medication [a claimant] takes" is an appropriate factor for ALJs to consider in evaluating subjective symptom testimony").

The ALJ discounted plaintiff's testimony concluding "that she admitted she [was] less than fully compliant with her medication." Tr. 24. At the hearing, plaintiff testified that she "sometimes [got] confused about whether [she had] taken [her medications] or not." Tr. 50.

The Court is unpersuaded this was a clear and convincing reason to reject plaintiff's testimony. First, the Ninth Circuit has held that an ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn,* 495 F.3d at 638 (quotation omitted). Here, the ALJ failed to do so.

Second, as the Ninth Circuit has explained with regard to claimants afflicted with mental health impairments who intermittently "go off" their medications: "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (internal quotation marks omitted).

---

[5] The Court notes that effective March 27, 2017, the Commissioner has promulgated new regulations for evaluating evidence, including subjective symptom testimony. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, *available at* 2017 WL 168819 at *5871, *5882 (January 18, 2017). Those revisions, however, do not apply in this appeal. *See Michael S. v. Berryhill*, No. 6:17-cv-01315-MC, 2019 WL 1062368, at *3 (D. Or. Mar. 6, 2019).

Finally, the Commissioner's assertion that plaintiff's testimony was inconsistent with her function report is an impermissible *post hoc* rationalization and therefore not a proper basis to affirm. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

C.   **Activities of Daily Living**

An ALJ may use activities of daily living to discredit a claimant's testimony where the activities (1) meet the threshold for transferable work skills or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ discounted plaintiff's testimony because "she could perform adequate self-care, prepare simple meals, do household chores and go out to the store," which the ALJ concluded "indicate[d] a higher level of function[ing]" than alleged by plaintiff. Tr. 25 (citing Tr. 192–204, 263–70, 439–48). The ALJ mischaracterized the record.

The ALJ cited plaintiff's most recent 2014 function report to support her findings. However, plaintiff wrote that her self-care included wearing "pajama type clothes," bathing between one and two times per week, and washing her hair once a week. Tr. 265. She also explained that she requires reminders to take care of her personal needs and grooming. *Id.* As for plaintiff's ability to prepare meals, she explained that she does not prepare her own meals, because

she had "stopped cooking."⁶ *Id*. Regarding household chores, plaintiff wrote that she does "dishes, laundry, [and] vacuum[ing]," but that she requires help from her children. Tr. 266. Regarding leaving her home, at the hearing plaintiff testified that she mostly drives "to the corner market for milk or things like that," but that she does not "really go anywhere in [her] car." Tr. 43. Finally, the ALJ's description of plaintiff's activities failed to discuss her testimony that she has "days when [she] just can't deal," which leave her bedbound, between five to fourteen days per month. Tr. 50. As such, although plaintiff can perform some basic hygiene and complete some limited activities around her home, her tasks are not demanding, she receives assistance, and she is frequently incapable of performing them. Similarly, her expeditions outside her home are of limited duration and she is usually accompanied by her partner. Tr. 266.

This minimal level of activity is not sufficient to reject her subjective symptom testimony. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, to properly discredit a claimant on the basis that her activities contradict her testimony, the "ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). The ALJ failed to do so here.

In sum, the ALJ failed to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony. The ALJ is reversed as to this issue.

---

⁶ The Court notes that in a 2013 Function Report, plaintiff wrote that she prepared food or meals twice a week, and most days made her children breakfast. Tr. 194.

## II.     Lay Opinion Evidence

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, the ALJ must provide "reasons germane to each witness" *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

The ALJ did not expressly reject the "multiple third-party statements" in the record. *See* Tr. 25–26; *see also* Tr. 216–23; 224–31; 254–62. Instead, the ALJ's decision states she "considered [the] statements" consistent with SSR 06-3p. Tr. 25–26. "This statement establishes that the ALJ reviewed the lay witness testimony in the record, but it does not provide a reason for discounting the testimony." *Molina*, 674 F.3d at 1114–15. As such, "the ALJ erred in failing to explain her reasons for disregarding the lay witness testimony, either individually or in the aggregate." *Id.* at 1115.[7]

The Commissioner concedes the ALJ "did not explicitly articulate a reason for discounting" the third-party statements, but argues any such error was harmless under *Molina*. Def.'s Br. 8–9. *Molina* held that where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations

---

[7] Plaintiff's assertion that the ALJ erroneously applied SSR 06-3p lacks merit. Although the Commissioner has rescinded SSR 06-03p for claims filed *on or after* March 27, 2017, *see* 20 C.F.R. §§ 404.1502, 416.902; 82 Fed.Reg. 5844-01, *available at* 2017 WL 168819 (Jan. 18, 2017), as noted, those revisions do not apply in this appeal because plaintiff's claims were filed in October 2013. *See Michael S.*, 2019 WL 1062368, at *3.

beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina*, 674 F.3d at 1117–22 (citations omitted).

As discussed previously, the ALJ failed to supply clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. *See supra* § I. Thus, *Molina's* harmless error analysis does not apply here. The ALJ is reversed as to this issue.

### III. Medical Opinion Evidence

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physicians." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Dr. McConochie conducted a consultative psychological examination of plaintiff in which he opined, as relevant here, that plaintiff had moderate difficulties interacting with the public, co-workers, and supervisors. Tr. 446; *see generally* Tr. 439–48. The ALJ gave the opinion great weight, including specific limitations to public contact *and* coworkers in the RFC. Tr. 23, 25. However, plaintiff's RFC did not include a limitation in her ability to interact with supervisors.

Plaintiff argues the ALJ erred because, despite assigning the opinion great weight, the ALJ failed to include the limitation in her ability to interact with supervisors in her RFC. Pl.'s Br. 10 (citing Tr. 23, 446). The Commissioner responds that the ALJ did not reject the limitation, but

instead concluded that plaintiff "retained the ability to interact with supervisors," and cites the definition of "moderate limitation" from the doctor's opinion. Def.'s Br. 8 (citing Tr. 445).

The Court finds the ALJ erred for two reasons. First, although the ALJ was free to reject Dr. McConochie's opined limitations by supplying legally sufficient reasons, she did not. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("The ALJ can meet [the specific and legitimate] burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Instead, the ALJ gave the opinion great weight and the Court declines to speculate as to the ALJ's reasoning for not including the doctor's opined supervisor limitation in the RFC. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (an ALJ must "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning"); *Burrell*, 775 F.3d at 1141 (reviewing courts "are constrained to review the reasons the ALJ asserts") (citation omitted).

Second, courts regularly find reversible error where ALJs purport to credit a medical opinion but fail to include the opined limitation in the claimant's RFC in analogous circumstances. *See, e.g., Dennis v. Colvin*, No. 06:14-cv-00822-HZ, 2015 WL 3867506, at *8 (D. Or. June 20, 2015) (holding that "[w]hen the ALJ credits the opinion of a medical source which includes the limitation on the ability to interact appropriately with supervisors, the omission of this specific, concrete limitation in the RFC" constitutes reversable error); *Gentry v. Colvin*, 2013 WL 6185170, at *16 (E.D. Cal. Nov. 26, 2013) (holding that "the ALJ erred in failing to address" the claimant's moderate "limitation[] in interacting with . . . supervisors" and instructing that "[o]n remand, the ALJ must either set forth reasons why this portion of [the doctor's] opinion was rejected or include the limitations in [the claimant's] RFC"); *see also Cynthia O. v. Berryhill*, No. 6:18-cv-00446-YY,

2019 WL 2550319, at *7 (D. Or. June 20, 2019) ("Where the ALJ professes to accept a doctor's opinion but without explanation fails to include the limitations contained in that opinion, the ALJ has effectively rejected the opinion.").

In sum, the ALJ failed to account for Dr. McConochie's limitation that plaintiff was moderately limited in her ability to interacting with supervisors. The ALJ is reversed as to this issue.[8]

## IV. Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted).

The "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully

---

[8] The Court briefly addresses plaintiff's assertion that her Global Assessment of Functioning ("GAF") score compelled a finding of disability. Although the Ninth Circuit has noted that GAF scores are relevant to the disability assessment because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment," *Garrison*, 759 F.3d at 1003 n.4, the court has further explained that "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability[.]" *Id.*; *see also Skelton v. Comm'r of Soc. Sec.,* No. 06:13-cv-01117–HZ, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice"). Accordingly, the assertion lacks merit.

developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler*, 775 F.3d at 1100-01 (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Garrison*, 759 F.3d at 1021.

Here, the ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, the lay opinion evidence, and failed to adequately account for all the limitations described Dr. McConochie's opinion. However, there are outstanding issues that must be resolved before a determination of disability can be made. Although the ALJ provided legally insufficient reasons to reject evidence, the overarching errors with the ALJ's analysis stemmed from a lack of specificity with her reasoning, not necessarily a lack of evidence in the record. *See Sandford M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-0571-AC, 2018 WL 6817048, at *7 (D. Or. Oct. 17, 2018) (remanding a step two of the credit-as-true analysis because "the ALJ's errors stemmed from a lack of specificity with her reasoning, not a lack of available contrasting evidence in the record"), *adopted*, 2018 WL 6816994 (D. Or. Dec. 26, 2018). Remand for an immediate award of benefits is not appropriate in this case.

## CONCLUSION

For the reasons discussed above, pursuant to 42 U.S.C. § 405(g), Sentence Four, the decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED this 22nd day of October, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge